The next case is number 221624, Rogers, Powers & Schwartz, LLP v. Natalie Minkina. At this time, Attorney Kasher, please introduce yourself on the record to begin. Good morning, Your Honors. Dana Kasher for Rogers, Powers & Schwartz. If I may, I'd like to reserve two minutes for rebuttal. You may. Thank you. Briefly, for context, the Bankruptcy Code is supposed to grant a fresh start to the honest but unfortunate debtor. It's a quote. Natalie Minkina is neither honest nor unfortunate. The judgment and all the issues in this case arise from sanctions issued against her in the State Court for having pursued what it was deemed to be, after full litigation, an entirely unmeritorious malpractice claim against Rogers, Powers & Schwartz. Since entry of that judgment, through efforts to collect, Natalie Minkina has twice been financially sanctioned for her... To some extent, Your Honor. Two more sentences. She was also jailed twice, which is what led to the filing of the bankruptcy. She does not have an inability to satisfy her financial obligations. Never did. Under Butner, a debtor is not supposed to receive a windfall as a result of a bankruptcy filing. And unless this Court establishes that a debtor's interest in property for purposes of the statute, which we'll look at in just a moment, is to be valued at the full value of her property, then that's exactly what will happen here with Natalie Minkina. Now, Judge Bailey in the Bankruptcy Court found that there was no binding decision with regard to how the language in Section 522, F2, it talks about the value that the debtor's interest in the property, and in this case, a property held as a tenancy by the entirety, would have in the absence of any liens. Now, with regard to real property, state law typically controls. Under Massachusetts state law, both spouses in a tenancy by the entirety hold a 100% individual unitary interest in real estate. But neither can sell on their own, right? Correct. So that seems the crux of the issue. What's the answer to that? Typically, if I had a house subject to a right of first refusal and another, it would diminish the value of the house compared to whether I had the house not subject to a right of first refusal. That's true. So how is this different? That is my basic question. It's different insofar as, first of all, we're talking legal fictions. This is for purposes of application of a statutory formula. It's not reality. Well, do you think that the language you just read, in the case of a property subject to a right of first refusal, we just pretend it's not subject to a right of first refusal? Well, it would depend on exactly how that right of first refusal worked. A right of first refusal is a contractual obligation. It's not statutory. It's not common law. And it's not limited to two identifiable people. Tenancy by the entirety can only be held by a married couple. You can have a right of first refusal with the entire world. But if I, in fact, had one with my cousin Joe, case comes out the same or different? Different. You would be ostensibly breaching the contract if you tried to do something. So it would reduce the value, right? The difficulty here is why is the tenancy of the entirety any different than any other encumbrance on a free and clear ability to sell? It would seem that it is an encumbrance and, therefore, in a functioning market, it's going to reduce the value of the property. Why wouldn't that statute, which, as I take it, you're accepting, like any other encumbrance, we would take that into account and figure out what the value is. Why wouldn't we take account of this encumbrance? Is there some reason not to? Well, first of all, it's not an encumbrance. It's a title. That is very limited. But the legal consequence of it is to restrict your ability to alienate the property, right? That is true. So why not, like any restriction on alienation, which has an effect on value for purposes of that statute, why don't we just treat this as just like that? Well, because the language of the statute says the value that the debtor's interest in the property would have. And under Caraccio, which is Supreme Judicial Court, the debtor's interest, as long as it's held in a tenancy by the entirety, is 100%. And what's the value of that 100% restricted interest? Well, it doesn't say it's restricted, Your Honor. But it is. Technically, it is. Absolutely, it is. It cannot be made to anyone else. Caraccio wasn't addressing the question of whether it was restricted because it didn't need to. It was just trying to figure out whether you had 100%. Correct. So now we have to figure out what value means. That's where the bankruptcy court then said, okay, so now we use the bankruptcy valuation definition, which is what a willing seller and a willing buyer would agree upon. Well, Natalie Minkina cannot be a willing seller. She cannot sell. So, again, we run into that legal fiction. Well, she can sell subject to. At any price. She cannot sell it. She can sell subject to agreement. She can. If you look at the law with regard to tenancies by the entirety, they can only be destroyed by divorce, death, deeds signed by both parties, or a deed from one to the other. But that's true of a person who has a property subject to right and another to refuse my ability to sell it. Okay. But, again, there's more than one person you can sell to. She can't. She can sell to anybody as long as the other party who has the tenancy in entirety agrees with her to sell it, right? Well, then they'd both be signing the deed and they would get the whole property. Yeah. And, therefore, the value would be the value of the whole property. It is not possible under this legal construction to value one spouse's interest separate and apart from the other. There's no such thing as selling my interest in a tenancy in the entirety. That's your point. Exactly right. I got it. Not possible to do. And so using that particular definition of value can't work here. Now, the point you made is absolutely valid. You can have a property that's subject to a right of first refusal, but that's not what we're talking about here, and that's not the language of the statute that was applied in order to avoid my client's lien on this property. If you look at the Snyder decision back in 1999 and 2000, the bankruptcy court and then the bankruptcy appellate panel wrestled with these issues that basically as long as both members of the couple are still alive, they're not divorced, and they're owning the property, you can't truly value one party's interest. So then they tried looking at it from different perspectives, and that's where that initial introduction came into play because Judge Kenner found I can't do it. It's subject to future events because if her husband dies tomorrow, she owns 100 percent. Absolutely. Free and clear, it's hers. And she can't have this kind of a windfall through the bankruptcy process. And I should point out that there's over $800,000 in equity in this house. If I find it's half, then it's contrary to the state law that they each own an individual unitary title to 100 percent. And there's really no fair, reasonable, or factual way to allocate as between those numbers. So Judge Kenner said, I can't make that decision. The bankruptcy appellate panel said, well, for bankruptcy purposes, you have to. And therefore, because this language is very clear, debtor's interest is 100 percent, so the value of the debtor's interest is 100 percent. And that has been the law since 2000. It was cited by this court at probation in Ray Guerin very specifically and has been followed by the bankruptcy court on many occasions. Many of the judges have raised the same issues you do, Your Honor, because clearly she can't own the whole thing because it is subject to incursions on that interest. What you're saying in this, the odd thing here is that the nature of the legal interest is she can't sell it. Exactly. And so the two choices are, you say, zero and 100. Essentially, Your Honor. In terms of any kind of definiteness. And zero seems totally fictional because she obviously has value in it, so on the other option is 100. Well, and the other thing is, when looking at sort of the greater picture, tenancy by the entirety, typically you've got mortgages that are held jointly, as you do in this case. The debtor gets the full value of those mortgages, even though someone else may well be contributing to, if not paying the entire thing. The homestead exemption is for the family unit, and the debtor gets full value of the homestead exemption. So while it may seem unfair because there is this limitation of the 100% interest, the fact is, in the calculation, for purposes of Section 522, they're getting 100% value with regard to the other factors in the calculation. And so I would argue that the law followed by Garin and set forth in Snyder should become essentially the law. Suppose she wanted to get an individual loan. Yes. And she wanted to use her tenancy of the entirety as collateral, right? Yes. Would that be a way in which we could figure out what the value of it would be? No. Because why not? Well, okay, first of all, this scenario occurred. When, in the state court, Dr. Minkina was found to be in contempt in order to pay $70,000 to cure the contempt, it was suggested that she access some of that equity in order to do so. On over $800,000 in equity, the bank would loan only $60,000. But doesn't that suggest that that hurts you, doesn't it? I don't think so, Your Honor. Isn't that consistent with Judge Bailey's point, which is that this has a present value in the market, and it's the value that somebody she would try and go to to get money from based on would assign to it. So they must be discounting the probability that she could sell it, given that she's got this other party who's got to sign the deed with her in deciding how much to loan her. And why wouldn't that be then just consistent with Judge Bailey's idea that it can't be 100%? Because when she goes to get something from it, nobody thinks it's worth the full value of the house. They all are discounting it heavily. Or is that wrong? Everyone knows that it is subject to the right of survivorship, which cannot be taken from her husband. But all I'm asking is, doesn't that negate the idea that she has the full value of the house when she goes out and about right now in the way that she would if she was the sole owner of it? No, because that definition that the bankruptcy court looked to requires a willing buyer and a willing seller, and they can't do that. Got it. I made one final argument. In the event that your honors don't find that the interest should be valued at 100%, then essentially you're allocating the value of the property consistent with a tenancy in common. Thank you.  Sorry, it's in the brief. Thank you. At this time, would Attorney Lipton please introduce himself on the record to begin? Good afternoon, your honors. May it please the court, my name is Marcus Lipton. I represent the appellee, Natalie Minkina. I just want to start with, this is a question of how to value one spouse's interest in a home held by tenants of the entirety. Now, I would implore the court to sort of disregard a number of the facts that my sister alluded to earlier. Character plays no role in this question. The means or the methods by which this debt was incurred plays no role in this question. Section 522 is a simple mathematical formula to use for determining whether a lien impairs an interest of the debtor in property. And the statute refers specifically to the debtor's interest. It doesn't refer to the entire value of the property. And Section 522A instructs that the fair market value is what is used to determine that. Now, I want to go back and challenge one of the sort of assumptions that I think were made earlier, which is that one party cannot sell their interest in the property. I don't agree that that's true. Caraccio decision states that one spouse can sell their interest, their interest only. They can encumber that interest. They can't sell the entirety of the property, but if they can sell their interest without destroying the tenancy by the entirety, the other spouse is the other spouse. What does that mean, sell their interest? Well, who would do that? So we would have to define, you know, who is the hypothetical buyer? That's what I'm asking. I'm asking exactly that question. Well, I think that there's a use for it. What did Caraccio have in mind? And what was the circumstance that it was contemplating in which a tenancy in entirety, the interest of one of the parties to a tenancy in entirety could sell the interest in it? Well, Caraccio was simply, I think, reciting the features of a tenancy by the entirety. That case wasn't about what the interests were specifically worth. I think it was about a husband who had taken a mortgage on property owned as tenants by the entirety without the wife's consent. So how do you determine what the value of one spouse's interest would be subject to the other? And I think you could use a very simple real-world example to put yourself in the shoes of this hypothetical person. There's two houses. House A is on the market for $1 million. It's owned by husband and wife, and they're both selling the house in fee simple. House B is identical to House A. It's owned by husband and wife, but the listing has a disclaimer. Only the husband is selling his interest here. The wife will not sell her interest. Does the hypothetical buyer think these two interests between A and B are the same? No, but if I understand your opponent's response to that is it just doesn't fit the language of the statute that's second hypothetical because there's no such thing as a willing seller of a half interest in a tenancy by the entirety. Well, I would disagree with it being a half interest. It's an interest. It's a sum interest. But there's no such thing as being able to sell my interest in the tenancy of the entirety. I disagree. It's conceivable. I would agree with you that a reasonable person wouldn't pay much for that, but it is certainly conceivable if you had two spouses who were of unequal health, unequal age, and a person came in and said, I want to pay $1,000 for a deed. Because you can succeed to the tenancy of the entirety of another? I believe you can. Is that clear under Massachusetts law? That's what Caraccio states clearly. Even when the tenancy in entirety is created by marriage? Correct. Well, that's the only way to create the tenancy by the entirety, but the only way to destroy it is death, divorce, a deed from one spouse to the other, or a deed from both spouses. So if one spouse deeds their interest only to a third party, the tenancy by the entirety isn't destroyed. The buyer of the seller's one half interest can come in. They have 100% right to full use of the property. They share equally with the non-selling party's rights to receive rents, and there's still the right of survivorship that the non-selling party has if the selling spouse were to pre-decease the non-selling spouse, the purchaser of that interest would have nothing. So I agree that it's very difficult to value that, and it's probably not worth much. It's certainly, you know, if I'm the home buyer, the person shopping for a home, I don't want the house that I might lose if the party who sold it to me dies before their spouse. So I would suggest, you know, if you were to come in with an actuarial expert to give an opinion on what the respective values of each party's interest is, I think either of them independent is very small. I don't think it's half, but I certainly don't think it's 100%, because it's still subject to the other spouse's continuing rights to live there and enjoy the property. Thank you. So going to the issue of state law controls, that's true. We say that all the time in bankruptcy court, that state law determines property rights. But there's no state law here that determines the value of those property rights. Caraccia was examining the universe of rights that are attendant to a tenancy by the entirety. They made no determination of what those were worth. Now, the bankruptcy code says it's the fair market value. So if you have a state law saying, and we don't agree that it says this, but if the state court says one spouse's interest is 100% of the value and the bankruptcy code says one spouse's interest is fair market value, we have to take the bankruptcy court under the supremacy clause. So the state court's decision, even if it says what the appellant says it does, it must yield to the bankruptcy code. The bankruptcy code requires evaluation of the debtor's interest solely and apart from the value of the house in itself. Now, that may be a difficult question to determine. It certainly would have required an evidentiary hearing in this case, and that was something that Dr. McKenna had proposed initially because she was prepared to come with actuarial evidence and ask the court to value that. Can you go back to your hypothetical with when one of the parties you're imagining sells their interest in the tenancy in the entirety? Is that what you said? Yes. And I just don't understand legally what that means. I think it means that the buyer assumes all of the rights that the seller had subject to the seller's spouse's continuing rights in that property. And that's what I just don't understand. If that's actually what happens, how does that not destroy the tenancy by the entirety? Well, because as long as they're still married, the selling spouse can go live somewhere else. The purchaser now has the seller's wife as a housemate. But I think what you're describing then is not literally selling an interest in the tenancy by the entirety. It's just a side contract in which one party is allowed to live there. What they don't get is the right to transfer the deed. Transferring the entire deed to the property. They don't have that. One spouse doesn't have the right to transfer. But you're imagining that the selling spouse, the spouse selling the interest in the tenancy in the entirety, retains the right over the deed, aren't you? No. Well, if she gives up that right, doesn't that destroy the tenancy by the entirety? Not according to Caraccio because there's only four methods of destroying it. And one party selling their interest is not one of those four methods. And I agree that the hypothetical sounds a little absurd. And that's because I don't think this applies in any real world situation because nobody would pay good money for that interest being subject to the other. Certainly not 100% of the fair market value of that property. There's some value to that. But your argument then hinges on us agreeing with you that it's possible to sell an interest in the tenancy by the entirety without destroying it. Is that right? Yes. And if we didn't agree with you on that, then you've got no argument in response to your opponent or you do? Well, I do. So the argument is then that it's still, there's no evidence that it's 100% of the fair market value. The sale may not be able to happen, but we've got to be able to figure out what the value is. Well, how can we do that under the statutory terms? Because the statutory terms is the valuation imagining a willing seller and a willing buyer. If you concede there's no possibility to be a willing seller, how are we going to apply that language?  I didn't say you conceded. I meant if. I said if you conceded, which is the premise of this part of our conversation. Sorry. Well, I think then perhaps the 50-50 approach is more logical than the 100% approach because taking the 100% approach. You're not arguing for a zero approach, are you? I think it's somewhere between more than zero and less than 100. So you don't argue that because that language couldn't apply, if the tenancy by the entirety would be destroyed, the right answer is zero rather than 100%. It's certainly closer to zero, yes. For purposes of this case, what role does the stipulation that the parties entered into have with respect to this question? Well, I think that if the court concludes, the court I think here has two choices to make. It's either 100% in which case the court's order would be overturned or it's some other amount and we've already stipulated that it's 525. So if it's not 100, then in this case, it's 500. Actually, my question is have you stipulated that it's an amount no greater than $525,000 or is that stipulation contingent on some other finding? For example, how the Snyder issues all come out. Why doesn't the stipulation that was entered here moot this appeal? To answer that, I wasn't a party to the case or wasn't involved in the case when that stipulation was actually entered. Our position would be that it's either 100% or it's no more than $525,000. So if it's no more than $525,000 and you apply the formula, then the lien would be entirely avoided. Is there anything in the record that shows whether that stipulation is contingent or just an agreement that this is the value? I don't believe that it's contingent. I don't believe that it says that anywhere. Then why wouldn't it be dispositive of the value? Well, I think that the appellant has sort of reserved its rights to make the argument that the court should. Is that in the record with respect to the stipulation? That's what I meant by contingent. Was the stipulation made contingent on a reservation of rights? I couldn't answer that for you. I'm sure Ms. Gatcher would answer with her remaining time. Our position would be that it's very difficult at this point to determine. You've made no argument to anybody that they didn't reserve their rights? No, I have not. Okay. Just briefly to touch on the issue of whether the court should allocate the homestead. The Massachusetts Homestead Statute is pretty clear that for tenants by the entirety, the exemption is whole and unallocated. It has a separate provision that says for joint tenants and tenants in common, it's allocated based on their proportional interest. The appellant is asking that the court read or create an apportionment in this case where the property is held as tenants by the entirety. That's nowhere in the statute. The statute is specifically broke up into property held by tenants by the entirety, unallocated. Property held joint tenants or tenants in common, that's allocated. Is there any law anywhere that tells us what the respective rights, with respect to this question, the rights between the debtor and the spouse might be? If she gets the full benefit of the $500,000 exemption, obviously the husband is going to have some issues down the road. Is there any law on that? That's an interesting question because in this case, the husband is not part of the bankruptcy. He's not liable for this debt at all. I understand. At this point, he doesn't have an interest in claiming any homestead exemptions. With respect to my question, is there any law that you can cite? None that I can specifically cite to, Your Honor. Unless the court has any other questions for me, I will rest on the papers. Thank you. At this time, Attorney Kasher, you have a two-minute rebuttal. Please reintroduce yourself on the record. Certainly. I'm not going to tell you what to start with, but I do want to make sure you answer Judge Howard's question about mootness and the stipulation. Oh, absolutely, and I intended to. The stipulation was expressly contingent upon the result of this appeal, which had already been commenced and then aborted and then recommenced when we had a final judgment. I don't know if you've seen the record, but Judge Bailey had made a preliminary ruling, and then once it became final, we came back here. So, yes, expressly contingent. And that stipulation, by the way, was that it was worth no more than the 525 if you decide to allocate. While we're talking about allocation and the homestead, yes, the homestead specifically provides, in a sense, tenancy by the entirety. They get the full $500,000. But if there's going to be some incursion on that, if you're going to be allocating the property value, then I'd argue that allocation of the homestead concomitantly would be appropriate here because you're treating it as a tenancy in common as opposed to the tenancy by the entirety. Is there any, aside from that point, is there any case law on the question of what happens in a case like this if the first spouse claims the homestead exemption? What does that mean for the second spouse? Not that I'm aware of, Your Honor. Well, understand, this very rarely comes up. I mean, unless you have an excess of $500,000 in equity in a property, you're not going to be here. And very few bankrupt debtors have over half a million dollars in equity in their property, which is why we're looking back at case law from 99 and 2000 that has just stood because it so rarely comes before you. Although I would point out the panel agrees, and that would be the First Circuit, with the Bankruptcy Court, that the debtor's interest in the tenancy by the entirety property for purposes of the Section 522-F formula should be valued at 100%. You can take one more, Brenda. Thank you, Your Honor. Your question with regard to destroying the tenancy was absolutely on point. And the citation in my brief that neither spouse may compromise or alter the tenancy unilaterally. And so the scenario that my brother laid out simply can't happen. A tenancy by the entirety can only exist between married people. And what do you make of that language about the interest in the tenancy in entirety being sold? It can't be. The representation with the SJC says it can be. Oh, Caraccio decision. If you look at it, there is that statement, and it's citing to New York law. That's the one place that it appears. And the other cases, and the quote I was just reading to you from, is a bankruptcy decision and a Massachusetts Supreme Judicial Court decision where, again, the tenancy by the entirety continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties, or a deed of one spouse to the other. Neither spouse may compromise or alter the tenancy unilaterally. So it simply can't happen. Thank you. Thank you. That concludes argument in this case. All rise.